PHILIP GILES (CA SBN 272582)
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for GMAC MORTGAGE, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| In re | Case No. 11-50594 |
|---|---|
| CHUKS LIESLY AMAJOR, | Chapter 13 |
| Debtor(s). | STIPULATION RE: AVOIDANCE OF LIEN |

This Stipulation is entered into by and between CHUKS LIESLY AMAJOR (hereinafter referred to as "Debtor"), by and through his attorney of record, Brette L. Evans; and GMAC Mortgage, LLC (hereinafter referred to as "Creditor"), by and through its attorney of record Pite Duncan, LLP.

**RECITALS**

A. Debtor is the makers of a Note in favor of Creditor dated September 8, 2006, in the original principal amount of $28,000.00 ("Note"), which is secured by a Second Deed of Trust encumbering the real property at 381 Skyway Drive, San Jose, California 95111 (the "Subject Property"). The Subject Property is more fully described in the Deed of Trust attached hereto as exhibit "A", which is incorporated herein by this reference. The Note and Second Deed of Trust are collectively referred to hereinafter as the "Subject Loan."

B. On or about January 24, 2011, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California - San Jose Division, and was assigned Case No. 11-50594.

/././.

/././.

- 1 -

C. On or about February 11, 2011, Debtor filed a Chapter 13 Plan praying that the court find Creditor's Second Deed of Trust encumbering the Subject Property be avoided and that its claim be paid as an unsecured.

**FOR PURPOSES OF THE DEBTORS CHAPTER 13 PLAN ONLY THE PARTIES HEREBY STIPULATE AND AGREE TO AN ORDER AS FOLLOWS:**

1. Creditor's claim shall be allowed as a non-priority general unsecured claim in the amount of $28,665.73. Creditor shall file an amended Proof of Claim listing its claim as unsecured to be paid in accordance with the Debtor's Plan;

2. The avoidance of Creditor's Second Deed of Trust is contingent upon the Debtor's completion of his Chapter 13 plan and the Debtor's receipt of a Chapter 13 discharge.

3. Upon receipt of the Debtor's Chapter 13 discharge and completion of his Chapter 13 Plan, this Judgment may be recorded by the Debtor with the Santa Clara County Recorder's Office;

4. Creditor shall retain its lien for the full amount due under the Subject Loan in the event of either the dismissal of the Debtor's Chapter 13 case or the conversion of the Debtor's Chapter 13 case to any other Chapter under the United States Bankruptcy Code;

5. In the event that the holder of the first lien on the Subject Property forecloses on its security interest and extinguishes Creditor's Second Deed of Trust prior to the Debtor's completion of his Chapter 13 Plan and receipt of a Chapter 13 discharge, Creditor's lien shall attach to the surplus proceeds of the foreclosure sale for the full amount of the Subject Loan balance at the time of the sale; and

/././
/././
/././
/././
/././
/././
/././
/././

6. Each party shall bear their own attorneys' fees and costs incurred in the present stipulation in bankruptcy case number 11-50594.

IT IS SO STIPULATED:

Dated: 5/3/11          By: /s/ Brette L. Evans
                           BRETTE L. EVANS
                           Attorney for Debtor(s)

PITE DUNCAN, LLP

Dated: 5/5/11          By: /s/ Philip Giles
                           PHILIP GILES
                           Attorney for Creditor

Doc Type:MTGR

. Loan No.
Loan Product: Interest Only Equity Line

RECORDING REQUESTED BY:
GMAC Mortgage Corporation DBA ditech.com

WHEN RECORDED ~~MAIL TO:~~
GMAC Mortgage Corporation DBA ditech.com
3200 Park Center Dr. Suite 150
Costa Mesa , CA 92626-

DOCUMENT: 19179387

Pages: 9
Fees.... 67.00
Taxes...
Copies..
AMT PAID 67.00

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE # 006
11/07/2006
9:59 AM

# DEED OF TRUST AND ASSIGNMENT OF RENTS

~~REQUEST FOR NOTICE~~
~~Under Section 2924b Civil Code~~

1063670

MIN 100037506562184961

THIS DEED OF TRUST AND ASSIGNMENT OF RENTS, as amended and extended (this "Deed of Trust"), is signed to secure advances under a GMAC Mortgage Corporation DBA ditech.com    Home Equity Line of Credit Agreement, as amended or extended (the "Agreement"); it is dated as of September 28, 2006 , and is an agreement among
Chuks L. Amajor             **UNMARRIED**
who reside(s) at  381 Skyway Drive, San Jose, CA 95111                                    as the grantor(s); and
Executive Trustee Services, Inc.          ,as the trustee; and GMAC Mortgage Corporation DBA ditech.com
as beneficiary and The Mortgage Electronic Registration Systems Inc. PO Box 2026 Flint, MI 48501-2026 (MERS) also beneficiary acting solely as a nominee for LENDER and LENDER's successors and assigns under this Deed of Trust.

Throughout this Deed of Trust, "we", "us" and "our" refer to grantor(s). "LENDER" refers to
GMAC Mortgage Corporation DBA ditech.com          or its assigns. The "Account" refers to the Home Equity line of credit account established by LENDER under the Agreement. "Trustee" refers to the trustee identified above, or any substitute trustee. "Borrower" refers to each person who signs the Agreement as borrower. The Agreement and this Deed of Trust, taken together, are called the "Credit Documents". "Signer" refers to any person (other than LENDER) who has signed a Credit Document.

DESCRIPTION OF SECURITY

By signing this Deed of Trust, we irrevocably grant, bargain, sell and convey to Trustee, in trust, with power of sale, (a) the real estate located at 381 Skyway Drive, San Jose                                        , County of Santa Clara      , State of  CA    , more fully described in Schedule A; (b) all buildings and other structures on the property; (c) all rights we may have in any road, alley, easement or license regarding the property or in any mineral, oil, gas or water which is part of the property; (d) all rents and royalties from the property; (e) all proceeds of any insurance on the property and all refunds of premiums on such insurance; (f) all proceeds of any taking (or threatened taking) of the property by any governmental authority ("condemnation"); and (g) all fixtures on the property at any time (collectively, the "Property").

The Property includes all rights and interests which we now have or which we may acquire in the future. For example, if the security mortgaged under this Deed of Trust is a leasehold estate and we subsequently acquire fee title to the Property, the rights and interests granted to MERS acting solely as a nominee for LENDER by this Deed of Trust will include the fee title that we acquire. This Deed of Trust is also a Security Agreement under the California Uniform Commercial Code and we hereby grant MERS acting solely as a nominee for LENDER a security interest in the personal property described in (d) through (g) above. This Deed of Trust also constitutes a financing statement filed as a fixture filing in the official records of the county recorder of the county where the Property is located, with respect to any and all fixtures included within the term "Property" and with respect to any goods or other personal property that may now or hereafter become part of such fixtures.

Initial CLA

GMAC-CA (REV 12/05)                                        -1-

Doc Type:MTGR

## SECURED OBLIGATIONS

We have signed this Deed of Trust to secure payment to LENDER by Borrower of up to $ 28,000.00 , plus FINANCE CHARGES and any other amounts due LENDER under the Agreement *(the "Total Balance Outstanding")*, and to secure performance by Borrower under the Agreement and our performance of the covenants of this Deed of Trust *(collectively, the "Secured Obligations")*.

## PRIORITY OF ADVANCES

The lien of this Deed of Trust will attach on the date this Deed of Trust is recorded. The indebtedness evidenced by the Credit Documents is a revolving indebtedness. The Credit Documents provide that amounts may be advanced, repaid and readvanced from time to time in accordance with the terms and provisions of the Agreement. Accordingly, the aggregate advances during the term of the Credit Documents may exceed the Credit Limit. However, the Total Balance Outstanding less FINANCE CHARGES at any time *(the "Earning Balance Outstanding")* shall never exceed the Credit Limit, except for advances made to protect the lien of this Deed of Trust. We agree that the lien and security title of this Deed of Trust shall not be deemed released or extinguished by operation of law or implied intent of the parties if the Total Balance Outstanding is zero as of the date of this Deed of Trust or is from time to time reduced to zero by payments made to LENDER.

## REPRESENTATIONS AND DUTIES

We promise that, except for Permitted Liens: (a) we own the Property; (b) we have the right to grant and convey the Property to Trustee; and (c) there are no outstanding claims or charges against the Property. The term "Permitted Lien" means (x) any mortgage, deed to secure debt or deed of trust *("security instrument")* disclosed to LENDER by any Signer in applying for the Account, to the extent that the amount secured by such security instrument does not exceed the amount disclosed on such application; and (y) any liens, claims and restrictions of record that do not individually or collectively have a material adverse impact upon LENDER's security, the value of the Property or the Property's current use.

Each of us gives a general warranty of title to LENDER. This means that each of us will be fully responsible for any losses which LENDER suffers because anyone but us has rights in the Property other than Permitted Liens. We promise that we will defend our ownership of the Property against any claims of such right.

We will neither take nor permit any action to partition, subdivide or change the condition of title to all or any part of the Property. We will not amend any Permitted Lien without LENDER's prior written consent.

## CERTAIN PROVISIONS OF THE AGREEMENT

We understand that LENDER may, under certain circumstances set forth in the Agreement, cancel its obligation to make future advances and/or require repayment at once of the Total Balance Outstanding. LENDER may change the terms of the Agreement, including terms relating to FINANCE CHARGES, as provided in the Agreement, without impairing its rights under

Under the Agreement, FINANCE CHARGES are based on the "prime rate" published in The Wall Street Journal or in certain circumstances the "prime rate" published in The New York Times or a similar index selected by LENDER. The rate of FINANCE CHARGES changes on a daily basis as the index or the amount outstanding under the Agreement increases or decreases. We understand that Borrower will not receive advance notice of such changes.

## PROMISES AND AGREEMENTS

We agree with LENDER as follows:

1. **TIMELY PAYMENT.** Borrower shall pay when due all sums owed LENDER under the Credit Documents.

2. **APPLICATION OF PAYMENTS.** All payments shall be applied by LENDER as set forth in the Agreement.

3. **MORTGAGES AND DEEDS OF TRUST; CHARGES; LIENS.** We shall make payments when due and perform all of our obligations under any mortgage, deed of trust or other security agreement on the Property.

- 2 -

Initial 

We shall pay or cause to be paid when due all loans, taxes, assessments, charges, fines, impositions and rents of any kind relating to the Property ("Assessments"). Receipts evidencing such payments shall be delivered to LENDER upon its request. Except for Permitted Liens, we shall not allow any encumbrance, charge or lien on the Property to become prior to this Deed of Trust.

### 4. HAZARD INSURANCE; CONDEMNATION.

(a) We shall, at our cost, keep all improvements on the Property insured against loss caused by hazards included in the term "extended coverage" or by other hazards LENDER may reasonably specify. Hazard insurance shall be in an amount equal to the lesser of (i) the full replacement cost of the building that is part of the Property or (ii) the amount of this Deed of Trust plus the total amount of all Permitted Liens; but never less than the amount necessary to satisfy any coinsurance requirement contained in the insurance policy.

All insurance policies and renewals must be in a form acceptable to LENDER and must include a standard mortgagee clause in favor of LENDER. LENDER shall have the right to hold the policies and renewals, subject to the terms of any Permitted Liens. If we pay the premiums directly, we shall provide LENDER with all renewal notices and, if requested by LENDER, all receipts for premiums. If policies and renewals are held by any other person, we shall supply copies of them to LENDER within ten calendar days after they are issued.

In the event of loss, we shall give prompt notice to the insurance company and LENDER. LENDER may file a proof of loss if we fail to do so promptly.

(b) The proceeds of any condemnation of the Property shall be paid to LENDER, subject to any Permitted Liens. We shall give LENDER notice of any threatened condemnation and sign all documents required to carry out this paragraph 4. No condemnation settlement may be made without LENDER's prior written approval which shall not be unreasonably withheld.

(c) Subject to the terms of any Permitted Lien, LENDER may elect that the proceeds of any insurance or condemnation (after payment of all reasonable costs, expenses and attorneys' fees paid or incurred by LENDER and us) shall be applied to pay the Secured Obligations, to repair or reconstruct the Property, and/or pay us for our loss. In the event that such proceeds are not used entirely for repair and reconstruction, we shall provide LENDER with a new appraisal or valuation of the Property, conducted by a person or entity and in a form reasonably acceptable to LENDER, unless LENDER waives this requirement in writing. The receipt of proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

If the Property is abandoned by us, or if we fail to respond to LENDER in writing within 30 calendar days from the date notice of a proposed insurance or condemnation settlement is given to us, LENDER may settle the claim, collect the proceeds and apply them as set forth above.

If the Property is acquired by LENDER, all of our right, title and interest in and to any insurance or condemnation proceeds shall become the property of LENDER to the extent of the sums secured by this Deed of Trust.

### 5. MAINTENANCE OF THE PROPERTY; LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.

We shall: use, improve and maintain the Property in compliance with law; keep the Property in good repair and pay when due all repair costs; prevent waste, impairment and/or deterioration of the Property; and comply with the provisions of any lease of the Property.

If the Property is part of a condominium project or a planned unit development, we shall promptly perform all of our obligations under the governing documents of the project or development.

### 6. PROTECTION OF LENDER SECURITY.
We shall appear in and defend any action or proceeding which may affect the security of LENDER or Trustee under this Deed of Trust or result in a violation of paragraph 3 above. If such an action is filed or we violate either Credit Document, then LENDER or Trustee may disburse funds and do whatever it believes necessary to protect the security of this Deed of Trust. In doing so, LENDER or Trustee shall give us notice but need not make demand or release us from any obligation.

Any amounts paid by LENDER or Trustee under this paragraph 6, with FINANCE CHARGES at the variable rate in effect under the Agreement, shall be paid by us upon demand. Until paid by us, such amounts are secured by this Deed of Trust. Neither LENDER nor Trustee is required to incur any expense or take any action under this Deed of Trust and no action taken shall release us from any duty.

### 7. INSPECTION.
Representatives of LENDER may inspect the Property from time to time. Except in an emergency, LENDER, must first give notice specifying reasonable cause for the inspection.

### 8. FINANCE CHARGES AFTER END OF ACCOUNT AND/OR JUDGMENT.
To the extent permitted by law, we agree that FINANCE CHARGES after the end of the Account and/or after a judgment is entered shall continue to accrue at the rates and in the manner specified in the Agreement.

- 3 -

Initial *CLA*

9. **OUR CONTINUING DUTIES AND LENDER'S RIGHTS; WAIVERS.** No waiver of any LENDER or Trustee right under the Credit Documents shall release or limit our liability, Borrower's liability or that of our successors or Borrower's successors, nor shall any waiver affect the lien or priority of this Deed of Trust. Neither LENDER nor Trustee shall be required to start proceedings against any successor or modify payment terms by reason of any demand made by Borrower, us or any successor.

No LENDER or Trustee act or failure to act shall waive any right under this Deed of Trust. All waivers must be in writing and signed by LENDER; they shall apply only to the extent and with respect to the event specified in the writing. Obtaining insurance, or paying taxes, other liens or charges shall not be a waiver of LENDER's right to demand payment at once of the sums secured by this Deed of Trust in the event of a default under the Credit Documents.

10. **SUCCESSORS AND ASSIGNS; JOINT AND SEVERAL LIABILITY.** This Deed of Trust shall bind us and our respective successors and permitted assigns for the benefit of LENDER and its successors and assigns. All agreements made by us or any successor are joint and several and may be enforced against each of us or any successor.

Any Signer who does not execute the Agreement *("Co-Grantor")* is not personally liable under the Credit Documents. Rather, each Co-Grantor is co-signing to encumber such Co-Grantor's interest in the Property. Each Co-Grantor agrees that LENDER and any Signer may modify either Credit Document, without notice to or consent from such Co-Grantor and without impairing LENDER's rights under the Credit Documents. Each Co-Grantor also waives (a) any right such Co-Grantor might otherwise have to require LENDER to proceed first against any Borrower or any other person or to pursue any remedy in LENDER's power, (b) any defense or right such Co-Grantor might otherwise have arising out of any release granted any Borrower or any defense that any Borrower may have against liability (other than for full payment), (c) any defense against LENDER arising out of LENDER's exercise of a power of sale upon the Property, even if such sale results in the loss of any right of subrogation or other right of such Co-Grantor against any Borrower or other person, and (d) the benefit of any statute of limitations affecting the Property.

11. **NOTICES.** All notices shall be in writing. Except where applicable law requires otherwise:

(a) LENDER notices shall be hand delivered or mailed by first class, registered or certified mail to the address of the Property or to such other address specified by the addressee in a written notice given to LENDER. Any LENDER notice shall be considered given on the day it is deposited in the U.S. mail (with proper postage affixed) or on the day it is hand-delivered.

(b) Our notices shall be mailed to Lender by first class, registered or certified mail to the address for such notices specified on our most recent monthly statement under the Agreement or to such other address specified by LENDER in a written notice given to us. Any such notice shall be considered given on the day it is received by LENDER.

12. **GOVERNING LAW.** This Deed of Trust will be governed by federal and California law. If any provision is invalid, illegal, or unenforceable, this Deed of Trust shall be interpreted as if such provision had never been included.

13. **COPIES.** We shall receive copies of the Credit Documents at the time they are signed or after this Deed of Trust is recorded.

14. **EXERCISING REMEDIES.** LENDER may exercise all of the rights and remedies provided by the Credit Documents or law, and any of these rights and remedies may be exercised individually or jointly, once or a number of times. The parties to this document are subject to the provision for Arbitration as set forth in the Agreement which is incorporated by reference as if set forth at length herein.

15. **EVENTS OF DEFAULT.**

(a) The events set forth in paragraph 15(b) are Events of Default if and when LENDER gives any Signer notice of default. We agree to notify LENDER promptly upon the happening of any event that would be an Event of Default under either Credit Document upon the giving of notice by LENDER.

(b) After giving notice of default, LENDER may end the Account and/or demand repayment at once of the Total Balance Outstanding in any of the following events:

    (i)   There has been fraud or material misrepresentation by any Signer in connection with the Account;

    (ii)  Borrowers have failed to meet the repayment terms of the Agreement for any amount outstanding; or

    (iii) Any action or inaction by any Signer has adversely affected the Property or any right of LENDER in the Property ;

to the extent permitted by law, this will include, but not be limited, any Signer (or any legal representative or successor of any Signer) agreeing to sell, transfer or assign or selling, transferring or assigning any interest in the Property, without the prior written consent of LENDER.

- 4 -           Initial _CLA_

(c) Notwithstanding any language in this Deed of Trust to the contrary, LENDER will not take any action in the event of default unless permitted by applicable law and LENDER will give us any grace period, right to cure and/or reinstatement right required by applicable law. This paragraph 15 is intended to give LENDER all rights permitted by applicable law.

16. **POWER OF SALE AND RELATED MATTERS.** IF BORROWERS DO NOT REPAY THE TOTAL BALANCE OUTSTANDING WHEN DUE, LENDER MAY EXERCISE ANY REMEDY AVAILABLE TO IT UNDER APPLICABLE LAW, INCLUDING INVOKING ITS POWER OF SALE OF THE PROPERTY. LENDER SHALL BE ENTITLED TO COLLECT ALL REASONABLE COSTS AND EXPENSES, SUCH AS ATTORNEYS' FEES, INCURRED IN PURSUING THE REMEDIES PROVIDED ABOVE.

IF LENDER INVOKES ITS POWER OF SALE UNDER THIS DEED OF TRUST, LENDER SHALL EXECUTE, OR CAUSE TRUSTEE TO EXECUTE, A WRITTEN NOTICE OF THE OCCURRENCE OF AN EVENT OF DEFAULT AND OF LENDER'S ELECTION TO CAUSE THE PROPERTY TO BE SOLD. LENDER SHALL CAUSE SUCH NOTICE TO BE RECORDED IN EACH COUNTY WHERE ANY PART OF THE PROPERTY IS LOCATED. LENDER OR TRUSTEE SHALL MAIL COPIES OF SUCH NOTICE, IN THE MANNER REQUIRED BY APPLICABLE LAW, TO US AND TO ANY OTHER PERSONS WHO ARE ENTITLED TO NOTICE UNDER APPLICABLE LAW. AFTER THE LAPSE OF SUCH TIME AS MAY BE REQUIRED BY APPLICABLE LAW, TRUSTEE SHALL, WITHOUT FURTHER DEMAND ON OR NOTICE TO US, SELL THE PROPERTY AT PUBLIC AUCTION TO THE HIGHEST BIDDER AT THE TIME AND PLACE AND UNDER THE TERMS DESIGNATED IN THE NOTICE OF SALE, IN ONE OR MORE PARCELS AND IN SUCH ORDER AS TRUSTEE MAY DETERMINE. TRUSTEE MAY POSTPONE SALE OF ALL OR ANY PARCEL OF THE PROPERTY BY PUBLIC ANNOUNCEMENT AT THE TIME AND PLACE OF ANY PREVIOUSLY SCHEDULED SALE AND TRUSTEE MAY FROM TIME TO TIME THEREAFTER POSTPONE SUCH SALE BY PUBLIC ANNOUNCEMENT AT THE TIME FIXED BY THE PRECEDING POSTPONEMENT. LENDER OR LENDER'S DESIGNEE MAY PURCHASE THE PROPERTY AT ANY SALE.

TRUSTEE SHALL DELIVER TO THE PURCHASER A TRUSTEE'S DEED CONVEYING THE PROPERTY SOLD WITHOUT ANY COVENANT OR WARRANTY, EXPRESSED OR IMPLIED. THE RECITALS IN THE TRUSTEE'S DEED SHALL BE PRIMA FACIE EVIDENCE OF THE TRUTH OF THE STATEMENTS MADE THEREIN. TRUSTEE SHALL APPLY THE PROCEEDS OF THE SALE (A) FIRST TO ALL REASONABLE COSTS AND EXPENSES OF THE SALE, INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' AND TRUSTEE'S FEES AND COSTS OF TITLE EVIDENCE; (B) THEN AS SET FORTH IN THE AGREEMENT; AND (C) FINALLY TO ANY PERSONS LEGALLY ENTITLED TO THE REMAINDER.

17. **ASSIGNMENT OF RENTS; RECEIVERS; LENDER POSSESSION OF THE PROPERTY.** As additional security, we hereby assign to LENDER any rents due on the Property after an Event of Default or abandonment of the Property. In any action to invoke the power of sale under this Deed of Trust, LENDER shall be entitled to the appointment of a receiver.

If an Event of Default occurs or we abandon the Property, LENDER, without notice, may enter upon, take possession of, and manage the Property. LENDER may then collect or sue in its own name for any rents due on the Property. All rents so collected shall be applied first to payment of the reasonable costs of operation and management of the Property (such as collection costs, receiver's fees, bond premiums and attorneys' fees) and then to the Total Balance Outstanding. LENDER and the receiver must account only for rents actually received.

Acts taken by LENDER under this paragraph 17 shall not cure or waive any Event of Default or invalidate any act done pursuant to notice of default.

We will not, without the written consent of LENDER, receive or collect rent from any tenant on the Property more than one month in advance. Upon an Event of Default, we will pay monthly in advance to LENDER or any receiver the fair and reasonable rental value of the Property or that part of the Property in our possession. If we fail to pay such rent, we will vacate and surrender the Property to LENDER or to such receiver. We may be evicted by summary proceedings.

18. **RECONVEYANCE.** Upon payment of all sums secured by this Deed of Trust, termination of the Account, delivery to LENDER of all checks providing access to the Account and the passage of at least 14 days after satisfaction of the first three conditions, LENDER shall surrender the Credit Documents to the Trustee and request Trustee to reconvey the Property. Trustee shall reconvey the Property without warranty to those of us legally entitled thereto.

19. **REQUEST FOR NOTICES.** LENDER requests that copies of notices of default and sale from the holder of any lien which has priority over this Deed of Trust be sent to LENDER at 3200 Park Center Dr. Suite 150 Costa Mesa, CA 92626- , as provided by Section 2924(b) of the Civil Code of California. A copy of any notice of default and of any notice of sale will be sent only to the address contained in this request. If LENDER's address changes a new address must be recorded.

- 5 -

Initial *CM*

Doc Type:MTGR

**20. EXHIBITS, SCHEDULES AND RIDERS, ETC.** The terms of any Exhibit, Schedule or Rider attached to this Deed of Trust or executed and recorded with this Deed of Trust shall be treated as if fully set forth in this Deed of Trust. All of the terms of the Agreement are made part of this Deed of Trust.

**21. TIME OF ESSENCE.** Time is of the essence in this Deed of Trust.

**22. ACTUAL KNOWLEDGE.** For purposes of the Credit Documents, LENDER shall not be deemed to have actual knowledge of any fact until it actually receives notice as set forth in paragraph 11 or until it receives written notice thereof from a source LENDER reasonably believes to be reliable. The date of receipt shall be determined by reference to the "Received" date stamped on such written notice by LENDER or its agent.

**23. TAXES.** If taxes on deeds of trust or the debts they secure increase in any way after the date of this Deed of Trust, we shall pay the full amount of any such increase.

**24. WAIVER OF STATUTORY RIGHTS.** To the extent permitted by law, for ourselves and our successors and assigns, we hereby waive the benefit of all homestead, dower, curtesy, appraisement, valuation, redemption, reinstatement, stay, extension, exemption and moratorium laws now existing or hereafter enacted and any right to have the Property marshalled upon any invocation of the power of sale. We further agree that any court having jurisdiction may order the Property sold as an entirety.

**25. EXPENSES OF LITIGATION.** In any proceeding to enforce any remedy of LENDER under the Credit Documents there shall be allowed and included, to the extent permitted by law, as additional indebtedness in the judgment or decree, any court costs and reasonable collection expenses which may be paid or incurred by LENDER for attorneys; paralegals; legal assistants; appraisers; documentary and expert evidence; stenographers; publication; surveys; abstracts of title; title searches; title insurance policies; and similar items which LENDER reasonably considers necessary in such proceeding or to evidence to bidders at any sale the true condition of the title to or value of the Property. Such expenses may be estimated to the extent they will be incurred after entry of the decree. All such expenses, and those that may be incurred to protect and maintain the Property or the lien of this Deed of Trust, shall be payable upon demand.

**26. CAPTIONS; GENDER; ETC.** The headings in this Deed of Trust are not to be used to interpret or define its provisions. In this Deed of Trust, the masculine gender includes the feminine and/or neuter, singular numbers include the plurals, and plurals include the singular.

**27. CERTAIN TRUSTEE MATTERS.** At any time, without liability and without notice, upon written request of LENDER and us, Trustee may consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any subordination or other agreement affecting this Deed of Trust, or reconvey, without warranty, all or any part of the Property.

LENDER, at its option, may at any time remove the current Trustee and appoint a successor Trustee. To do so, LENDER shall record with the register of deeds of the county where the Property is located an instrument executed and acknowledged by LENDER and containing (a) our names and the name of LENDER and the original Trustee, (b) the book and page where this Deed of Trust is recorded, and (c) the name and address of the successor Trustee. The successor Trustee shall, without conveyance of the Property, succeed to all the title, estate, powers and duties conferred upon Trustee by this Deed of Trust and applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**28. WRITTEN STATEMENTS.** Within five calendar days upon request in person or within ten calendar days upon request by mail, we will furnish a written statement duly acknowledged of the amount due on this Deed of Trust and whether any offsets or defenses exist against debt secured by this Deed of Trust.

LENDER may collect a fee not to exceed $50 for furnishing the statement of obligation, as provided by Section 2943 of the Civil Code of California or any successor statute.

**29. MERGER.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate of LENDER in the Property, without the written consent of LENDER.

**30. MERS.** Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust, but, if necessary to comply with local law or custom MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of these interests, including but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including but not limited to, releasing and canceling this Deed of Trust.

Initial _CLA_

By signing this Deed of Trust, we agree to all of the above.

*Chuks L. Amajor* (signature)

Chuks L. Amajor

## ALL PURPOSE ACKNOWLEDGEMENT

STATE OF CALIFORNIA : S.S.
COUNTY OF Sacramento

On 9-28-06, before me, Jennifer Ledford a Notary Public in and for said State, personally appeared
Chuks L. Amajor
~~personally known to me~~ (or proved to me on basis of satisfactory evidence to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~) and that by his/~~her/their~~ signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

JENNIFER LEDFORD
Commission # 1423230
Notary Public - California
Sacramento County
My Comm. Expires Jun 8, 2007

WITNESS MY HAND AND OFFICIAL SEAL
Signature
My commission expires: Jun 8, 2007

-7-

**REQUEST FOR FULL RECONVEYANCE**

**TO TRUSTEE:**

The undersigned is the holder of the Agreement secured by this Deed of Trust. The amounts owed under said Agreement, together with all other indebtedness secured by this Deed of Trust, have been paid in full. The undersigned hereby directs you to cancel said Agreement and this Deed of Trust and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated:_____

*DEED OF TRUST*

**THIS INSTRUMENT PREPARED BY:**
William Taylor
GMAC Mortgage Corporation DBA ditech.com
3200 Park Center Dr. Suite 150, Costa Mesa, CA 92626

Title No.

**RECORDING REQUESTED BY:**
GMAC Mortgage Corporation DBA ditech.com

**WHEN RECORDED, MAIL TO:**
GMAC Mortgage Corporation DBA ditech.com
3200 Park Center Dr. Suite 150, Costa Mesa, CA 92626

**RESERVE THIS SPACE FOR USE OF RECORDING OFFICE**

Doc Type:MTGR

# EXHIBIT A

SITUATED IN THE CITY OF SAN JOSE, COUNTY OF SANTA CLARA AND STATE OF CALIFORNIA:

LOT 152, AS SHOWN ON THAT CERTAIN MAP ENTITLED TRACT NO. 2583, MONTEREY HIGHLANDS UNIT NO. 1, WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON APRIL 28, 1960, IN BOOK 119 OF MAPS PAGE(S) 44.

Permanent Parcel Number: 684-13-065
CHUKS AMAJOR, AN UNMARRIED MAN

381 SKYWAY DRIVE, SAN JOSE CA 95111
Loan Reference Number : MCNJ01/5891108
First American Order No: 10636770
Identifier: FIRST AMERICAN LENDERS ADVANTAGE

AMAJOR
10636770
FIRST AMERICAN LENDERS, ADVANTAGE
DEED OF TRUST

When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*LENDERS ADVANTAGE*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO 44114*
*ATTN: FT1120*